Stephen Ryan, Jr. (669727)
Petersen And Ryan PLLC
11 Maple Avenue
Shrewsbury, MA 01545
Attorney For Plaintiff, John Doe

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br> v.<br><br>HEATHER BALUNAS CLABBERS,<br><br>    Defendant. | **Civil Action No.:** |

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, John Doe, ("Plaintiff"), by and through his attorney, brings this action against Defendant, Heather Balunas Clabbers ("Balunas", the "Defendant" or a "Party", and together with Plaintiff, the "Parties") seeking redress for Defendant's violations of 15 U.S.C. § 6851 and M.G.L. c. 214, §1B, as well as for intentional infliction of emotional distress upon Plaintiff. In support of Plaintiff's claims, Plaintiff alleges as follows:

### I.  NATURE OF THE ACTION

1. A hitherto unknown malicious actor posted to a pornography website an image and an accompanying video of Plaintiff engaging in a sexually explicit act (the "Video").

2. The Video was apparently surreptitiously recorded during an adult "cam" streaming session to which Plaintiff was party, which was supposed to be a live stream that would end without remaining on the internet in perpetuity.

1

3.  Somehow, Balunas, who is Plaintiff's former spouse, came to possess, at minimum, a still image, i.e., screenshot, from the Video at some point in 2022.

4.  Based on information and belief, Balunas possesses the sexually explicit video in full.

5.  From 2022 through November, 2025—when Balunas received a Demand Letter from Plaintiff—Balunas has repeatedly and wantonly treated the Video like a piece of blackmail.

6.  Balunas used the Video to extract inequitable concessions from Plaintiff during the Parties' divorce proceedings.

7.  Balunas sent a screenshot of the Video's thumbnail by text message to Clabber's father who resides in Pennsylvania, and upon information and belief, Balunas has shared the Video with other individuals through electronic, internet-based means.

8.  Balunas refers to how the Video might somehow be weaponized so as to cause Plaintiff to be classified as a "sex offender," and how the Judge tasked with overseeing the Parties' divorce may take adverse action against Plaintiff were the judge to be made aware of the Video.

9.  Balunas refers to the Video within earshot of Plaintiff's young children and Plaintiff's girlfriend, causing one of them to inquire about the Video.

10. On information and belief, which belief Plaintiff strongly believes will be corroborated through discovery, Balunas has violated 15 U.S.C. § 6851, which carries with it liquidated damages of $150,000.00 plus attorney's fees and costs.

11. Balunas' conduct is also violative of M.G.L. c. 214, §1B, which protects a citizen from unreasonable or serious interreference's with his or her privacy, damaging Plaintiff in an amount to be proved at trial.

12. Finally, Balunas' conduct is tortious, as she purposefully and wantonly holds the regrettable and humiliating Video over Plaintiff for the explicit purpose of causing him mental anguish and anxiety, and Plaintiff has actually so suffered for years because of Balunas' illegal and tortious conduct.

13. Damages associated with this Defendant's intentional infliction of emotional distress will be established at trial.

## II.    PARTIES

14. Plaintiff, John Doe, is a citizen of the Commonwealth of Massachusetts and resides in Mendon, Massachusetts.

15. Defendant, Heather Balunas Clabbers, is a citizen of the Commonwealth of Massachusetts and resides in Mendon, Massachusetts.

## III.    JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 6851.

17.    Venue is proper in this District pursuant to 28 U.S.C. 1391 because both Parties are citizens of and reside in the Commonwealth, and a substantial portion of the conduct that forms the basis for this action was carried out within the Commonwealth.

## IV.    FACTUAL ALLEGATIONS

*The Origins of the Video*

18.    In or about August, 2022, Plaintiff, in a moment he regrets, was surreptitiously recorded while performing a sexually explicit act in an adult "cam" streaming session.

19. This chatroom was a legal, adult chatroom that held itself out as being private, secure and, most importantly, a *live* streaming service that would not leave behind a permanent, internet footprint.

20. Apparently, a hitherto unknown, malicious actor surreptitiously recorded Plaintiff in the midst of his engaging in a sexually explicit act and later posted a thumbnail and the captured Video to a pornographic website with a bizarre, despicable title that identified each of the Parties by name and specified Plaintiff's occupation.

21. Shortly after the Video was posted to the pornographic website, Balunas made Plaintiff aware that she had received a copy of the Video, claiming to have been emailed the same from an unfamiliar email sender.

22. Plaintiff filed a police report, immediately after which, almost unbelievably, the Video was removed from the pornographic website seemingly without explanation.

23. Balunas apparently also filed a police report after the Video was posted to the pornographic website for the second time, and, to date, based on information and belief, the police have not carried out a fulsome investigation concerning the origins of the Video.

24. Despite the Video's having been removed from the pornographic website, based on information and belief, Balunas would keep a copy of the Video.

25. Though the Video's content was inexplicably removed from the pornographic website, the thumbnail and title was left behind.  To date, Plaintiff has expended considerable time and energy seeing to it that these remnants were similarly removed.

*Defendant's Unlawful Use of the Video*

26. Balunas exploited the Video to extract inequitable concessions from Plaintiff throughout the Parties' divorce proceedings.

27.     Balunas would opine to Plaintiff on at least one occasion that the Video—ostensibly should Balunas chose to broadcast its existence—could result in Plaintiff's being registered as a sex offender.

28.     Balunas has threatened to share the Video with friends and family, and in at least one instance, intimated that her acquaintances had seen the Video.

29.     Upon information and belief, the Video in its entirety or a sexually explicit frame therefrom has been disseminated via email, iPhone "iMessage" or some other internet-based means of telecommunication.

30.     In or around October, 2024, Plaintiff complained to Balunas that she had violated the Parties' divorce agreement by introducing the Parties' two children to a new romantic partner without first allowing Plaintiff to meet said romantic partner.

31.     Shortly after Plaintiff voiced his discontent concerning Balunas' violation of the Parties' divorce agreement, the Video was once again posted to the same pornographic website to which it was originally posted.

32.     Additionally, on or around October 16, 2024, Balunas would send a screenshot from the Video along with the despicable title to Plaintiff's father, who resides in Pennsylvania. Balunas would do so without Plaintiff's consent and with the intent of injuring Plaintiff.

33.     Plaintiff, who has a close relationship with his father, was distraught at the prospect that his relationship with his father would be irreparably damaged.

34.     On or around October 22, 2024, Plaintiff received a letter from at attorney Balunas' had retained demanding that Plaintiff have the Video removed from the pornographic website, spuriously alleging that the Video cast doubt upon Clabber's fitness as a parent.

35.     On or around October 6, 2025, Plaintiff again voiced concerns that he was being insufficiently informed of certain medical updates concerning his children in contravention of the Parties' divorce agreement, and Balunas responded by threatening to make Plaintiff's grandparents aware of the Video.

36.     Again, Plaintiff was extremely upset by the prospect that Balunas would purposefully attempt to damage another one of his familial relationships.

37.     On or around October 12, 2025, Plaintiff arrived at Balunas' residence at a pre-arranged time to pick his children up for a sporting event.

38.     Apparently distressed by the potential that the Parties' children would be a few minutes late due to Balunas' tardiness, Balunas approached Plaintiff's vehicle in a visibly distressed state while yelling about the Video in earshot of the Parties' children.

39.     Upon getting into Plaintiff's vehicle, one of his children asked Plaintiff (the child's father) what Balunas (his mother) meant in reference to the Video.

40.     Until approximately 9 p.m. that evening on or around October 12, 2025, Balunas would repeatedly text Plaintiff about the Video in a harassing manner.

41.     In addition to the foregoing instances in which Balunas wantonly deployed the Video to violate Plaintiff's privacy and cause him mental anguish, Balunas has repeatedly mention the Video in correspondence with Plaintiff, always in a manner intended to demean Plaintiff and make him concerned that additional members of his personal life and social circle would come to know about the Video.

42.     Balunas, immediately after somehow coming to possess the Video, would treat the same as a piece of blackmail to, among other things, cause Plaintiff to feel helpless in his own divorce proceedings and worry that his familial and interpersonal relationships were at risk.

43.    Balunas, through text, told Plaintiff that she discussed the Video with an acquaintance who is a police offer, who opined that the Video put Plaintiff at risk of becoming a registered sex offender.

44.    Based on information and belief, Balunas has shared the Video in its entirety or some portions thereof with persons in addition to Plaintiff's father, and in each instance, there was no legitimate, countervailing interest in sharing the Video.

45.    Balunas has repeatedly mentioned the Video in front of Plaintiff's children, causing him to worry that his children would learn of the existence of that which should never have left the confines of the online adult cam session in the first instance.

## V.    CAUSES OF ACTION

### COUNT I
### Violation of 15 U.S.C. § 6851

46.    Plaintiff repeats and realleges paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.    15 U.S.C. § 6851 outlaws a party's disclosing intimate visual depictions of another person through a means of interstate commerce without the depicted party's consent.

48.    The Video contains intimate visual depictions of Plaintiff.

49.    Balunas has shared the "thumbnail" of the Video with Plaintiff's father via text.

50.    On information and belief, Balunas has shared the Video in its entirety or explicit screenshots thereof via email, iPhone "iMessage" or other internet-based means of telecommunication with persons other than Plaintiff's father.

51.    Plaintiff did not consent to Balunas sharing the Video or any portion thereof.

52. Plaintiff has good reason to believe that discovery will reveal the extent to which the Video or sexually explicit portions or screenshots thereof/therefrom has/have been shared with others through means of interstate commerce.

53. 15 U.S.C. § 6851 provides for liquidated damages in the amount of $150,000 plus attorney's fees and costs to a Party who has had their intimate visual depictions disseminated without their consent through means of interstate commerce.

54. Plaintiff's damages resulting from Balunas' violation of 15 U.S.C. § 6851 are at least equal to $150,000 but, in any event, Plaintiff will be entitled to the liquidated damages provided therein based on the evidence to be collected through discovery.

## COUNT II
### Violation of M.G.L. c. 214, § 1B

55. Plaintiff repeats and realleges paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. M.G.L. c. 214, §1B, provides that a "person shall have a right against unreasonable, substantial or serious interference with his privacy."

57. A claim pursuant to M.G.L. c. 214, § 1B will lie where a private party "gathers or disseminates" information of a "highly personal or intimate nature when there exists no legitimate, countervailing interest."

58. To date, Plaintiff does not know how Balunas came to possess the Video.

59. Nevertheless, Balunas has incontrovertibly disseminated information of a highly personal and intimate nature—namely, the thumbnail of the Video—to Plaintiff's father without consent and in the absence of a countervailing interest.

60.     No interest whatsoever was served from Balunas' having shared the thumbnail of the Video with Plaintiff's father other than to cause Plaintiff mental anguish and harm a familiar relationship.

61.     Balunas has admitted in a text message sent to Plaintiff that she has discussed the Video with an acquaintance who is a police officer, apparently seeking this officer's opinion as to the potential for the Video to have caused Plaintiff to be registered as a sex offender.

62.     Plaintiff's children have on at least occasion asked what their mother meant by the "Video."

63.     Plaintiff has suffered a loss of interpersonal relationships, extreme anxiety, loss of sleep and a constant feeling of dread that a regrettably video that only exists because of an illegal act by a hitherto unknown bad actor could be used to further harm him and his reputation.

64.     Plaintiff sought approximately a year of therapy for the mental anguish caused by Balunas' wanton conduct.

65.     Plaintiff has been damaged by Balunas' violation of M.G.L. c. 214, § 1B in an amount to be proved at trial.

**COUNT III**
**Intentional Infliction of Emotional Distress**

66.     Plaintiff repeats and realleges paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     A party will have made out a claim for intentional infliction of emotional distress when he or she proves that: (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress.

68.     Balunas' correspondence with Plaintiff, which shall be presented at trial, shows her intentionally wanton mindset in viewing the Video as a piece of blackmail and deploying it as such.

69.     Balunas was aware that the Video was humiliating.

70.     Balunas shared the Video with Plaintiff's father, with whom she specifically knew Plaintiff had a good relationship for the specific purpose of attempting to damage the same.

71.     Balunas threatened to share details of the Video with Plaintiff's grandparents during a disagreement with Plaintiff about their respective obligations to inform one another of certain developments concerning their children pursuant to the Parties' divorce agreement.

72.     The Parties' have a contentious relationship vis-à-vis sharing custody and visitation time with their children.

73.     Balunas knew or should have known that repeatedly referencing the Video in front of their young children would cause Plaintiff severe emotional distress.

74.     Plaintiff has in fact suffered extreme emotional distress since Balunas somehow came to possess the Video and began to weaponize the same.

75.     Plaintiff has lost his usual desire for socializing, has suffered increased, severe anxiety, has lost sleep and has completed approximately one year of therapy in an attempt to heal from some of the mental anguish intentionally inflicted upon him by Balunas.

76.     The amount of damages caused to Plaintiff as a result of Balunas' tortious conduct will be determined at trial.

## COUNT IV
### Injunctive Relief and Specific Performance

77.     Plaintiff repeats and realleges paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     The Video could not have been lawfully disseminated at all, and so Plaintiff seeks an injunction against any further dissemination of the Video by Balunas.

79.     Balunas should not have the Video in the first instance, and there is no reason that Balunas should continue to possess a copy of the Video or any screenshot, thumbnail, etc. thereof.

80.     Plaintiff, therefore, requests that Balunas be ordered to permanently destroy any version, copy or screenshot of or any thumbnail from the Video in her possession, and that Balunas be further ordered to make every reasonable effort to ensure that any version, copy or screenshot or any thumbnail from the Video that Balunas disseminated is permanently destroyed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby demands judgment against Balunas in the amount of no less than $150,000 in liquidated damages pursuant to 15 U.S.C. § 6851, plus attorney fees, costs and interest in pursuit of this action and for such other relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby requests a jury trial on all counts so triable.


Dated: April 29, 2026                                    Respectfully submitted,


                                                         /s/ *Stephen Ryan, Jr.*
                                                         Stephen Ryan, Jr. (BBO #669727)
                                                         Petersen and Ryan PLLC
                                                         11 Maple Avenue
                                                         Shrewsbury, MA 01545
                                                         (508) 842-2540
                                                         stephen@petersenryanlaw.com
                                                         *Attorney for Plaintiff*


11